UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

COMMODITY FUTURES TRADING
COMMISSION,

                          Plaintiff,

v.

DAMIAN CASTILLA, DCAST CAPITAL
INVESTMENTS LLC, and FIVE TRADERS
LLC,

                          Defendants.

Case No.:  1:22-cv-21520

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES,
RESTITUTION, DISGORGEMENT, AND OTHER RELIEF**

Plaintiff, Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.   SUMMARY

1.       Between at least January 1, 2014 and continuing through present day (the "Relevant Period"), Damian Castilla ("Castilla"), DCAST Capital Investments LLC ("DCAST"), and Five Traders LLC ("Five Traders") (collectively, "Defendants"), engaged in a fraudulent scheme to solicit and misappropriate money given to them for the purpose of trading commodity futures contracts ("futures") in commodity pools.  DCAST and Five Traders were unregistered commodity pool operators ("CPOs"), and Castilla was an unregistered associated person of both CPOs.  During the Relevant Period, Defendants fraudulently solicited over $3.4 million from over fifty individuals and entities ("pool participants") to trade futures in commodity pools (the "Pools") that did not exist.  In total, Defendants caused pool participants to lose over $2.6 million.

2.     During the Relevant Period, Defendants made various material misrepresentations to solicit pool participants, including that: (1) Defendants earned significant profits on behalf of pool participants by trading futures; (2) the returns Defendants paid to pool participants were generated from futures trading profits; (3) Castilla was an experienced and profitable trader; and (4) pool participants would have their own trading subaccounts with DCAST or Five Traders.

3.     Defendants' representations were false. Among other things, Defendants' trading was not profitable, the funds returned to pool participants were Ponzi payments sourced from later pool participants, and no separate trading accounts were ever created. In fact, Defendants conducted very little trading in futures accounts as promised. Instead, Defendants misappropriated the vast majority of the funds, issued false account statements that showed profitable trading in nonexistent trading accounts, and used a portion of the funds obtained from pool participants to pay fake profits to earlier pool participants. In total, Defendants misappropriated approximately $1.8 million of pool participants funds for personal use, including for car payments, home remodeling, lawn services, clothing, restaurants, and other personal expenses—in addition to making over $1.6 million in Ponzi payments to pool participants.

4.     Castilla also failed to disclose to over fifteen pool participants that provided over $700,000 in funds after March 19, 2020 that he had been charged by the Florida State Attorney's Office, in Miami-Dade County Case No. 13-2020-CF-004700-0001, for fraud and grand theft in connection with his solicitation of certain pool participants.

5.     Finally, Defendants made false statements of material fact to the Commission that Defendants knew or should have known was false or misleading. Specifically, Defendants submitted a list of five clients in response to a subpoena that Defendants, through counsel,

represented was a complete list of all current and former clients since 2012.  In a subsequent response, Defendants submitted an updated list that identified twelve clients—adding only seven clients to the original list.  Both lists were incomplete and false.  Defendants did not disclose nearly forty clients that provided almost $2 million to Defendants.

6.      By virtue of this conduct and the conduct further described herein, Castilla, DCAST, and Five Traders, either directly or as controlling persons, have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4*o*(1)(A) and (B), and 6(c)(2) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6*o*(1)(A), (B), 9(2), and Regulations 4.20, 4.21, and 4.22, 17 C.F.R. §§ 4.20, 4.21, 4.22 (2021).

7.      During the Relevant Period, Castilla was an officer, employee, or agent of DCAST and Five Traders.  Therefore, DCAST and Five Traders are liable for the acts and omissions of Castilla done in the scope of his employment or office, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021).

8.      Castilla was a controlling person of DCAST and Five Traders throughout the Relevant Period and did not act in good faith or knowingly induced DCAST's and Five Traders's violations of the Act and Regulations described herein.  Therefore, Castilla is liable for DCAST's and Five Traders's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

9.      Unless restrained and enjoined by this Court, Defendants are likely to continue engaging in the acts and practices alleged in this Complaint and similar acts and practices.

10.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations promulgated thereunder, and to enjoin them from engaging in

any commodity related activity.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (providing that that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).

12.     Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

13.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District and certain transactions, practices, and courses of business in violation of the Act and Regulations occurred, are occurring, or are about to occur in this District, among other places.

## III.     THE PARTIES

14.     Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations promulgated thereunder.  One of its core responsibilities is to protect the public interest by ensuring the financial integrity of all transactions subject to the Act and Regulations and protecting market participants from fraudulent practices.  Section 3(b) of the Act, 7 U.S.C.

§ 5(b).  The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street NW, Washington, DC 20581.

15.     Defendant **Damian Castilla** is a resident of Miami, Florida and is the sole owner and sole managing member of DCAST and Five Traders.  Castilla applied for registration with the Commission as a commodity trading advisor in August 2013, but withdrew that application in November 2013.

16.     Defendant **DCAST Capital Investments LLC** is a Florida entity with its last known place of business in Miami, Florida.  DCAST previously claimed an exemption from registration with the Commission as a commodity trading advisor, but withdrew its exemption in April 2015.  It has never been registered with the Commission.  Castilla is the sole owner and manager of DCAST.

17.     Defendant **Five Traders LLC** is a Wyoming entity with its principal place of business in Miami, Florida.  It has never been registered with the Commission.  Castilla is the sole owner and manager of Five Traders.

## IV.     FACTS

A.     **Defendants Fraudulently Solicited Pool Participants for the Pools.**

18.     During the Relevant Period, Defendants made material misrepresentations and omissions to pool participants and prospective pool participants about the Pools via telephone, in-person, video-conferencing, and electronic communications.

19.     Defendants misrepresented a long history of professional trading—claiming, at times, that Castilla had nearly twenty years of successful professional trading experience, over five years of futures trading experience, and that trading futures had become Castilla's full-time job.  In reality, Defendants engaged in very little trading of futures and the little trading Defendants engaged in was not profitable.

20.     Defendants claimed that pool participants would have separate subaccounts connected to a master trading account that would automatically allocate trades that Defendants placed among Defendants accounts and the accounts of other pool participants.  In reality, Defendants never established any subaccounts for any pool participants; rather Defendants provided pool participants with faked account statements showing fictitious trades and fictitious account balances that represented pool participants' individualized shares of Defendants' trading activity.

21.     Once Defendants obtained money from pool participants, Defendants continued to misrepresent their futures trading as profitable by providing pool participants with fake trading account statements that showed regular and consistent profits in purported subaccounts. Defendants regularly used the false trading history reflected in these fake subaccount statements to solicit additional funds from pool participants as well as to solicit new pool participants.

22.     Defendants often solicited friends and family of earlier pool participants that received fake account statements.  For example, Defendants regularly claimed during oral solicitations that they typically earned profits between eight and ten percent per year for other pool participants.  The returns were often consistent with the fake account statements that Defendants provided to pool participants.

23.     Additionally, Defendants made Ponzi payments to earlier pool participants, misrepresenting that the funds being returned were from profitable trading in futures account. Defendants used these Ponzi payments to further solicit friends and families of pool participants. For example, during solicitations of new pool participants, Defendants pointed to the Ponzi payments as proof that Defendants ran legitimate, profitable commodity pools.  For example, Defendants made Ponzi payments of over $40,000 between July and October 2020 to Participant

A.  Shortly thereafter, Defendants obtained $200,000 from two pool participants that were acquaintances of Participant A.  Within three weeks of receiving this $200,000 contribution, Defendants made additional Ponzi payments of over $150,000 to other pool participants. Defendants' bank records show that on many occasions, Defendants would often dole out recently-received pool participant contributions to earlier pool participants within days of receipt.

24.     The profits claimed were fake, and like all Ponzi schemes, Defendants became unable to repay all pool participants that requested redemptions.  Defendants then resorted to even more false claims to pool participants who requested funds.  In a number of instances, Defendants claimed that the money was available, but that Defendants' bank accounts had been frozen by various government agencies.  To some pool participants, Defendants claimed that the Office of Foreign Assets Control had frozen Defendants' bank accounts due to issues with the funding source of another pool participant.  To other pool participants, Defendants claimed that the Commission froze Defendants' bank accounts during an investigation that Defendants were trying to resolve.  Defendants' bank accounts were never frozen by a government agency; Defendants simply did not have the funds available to repay pool participants.

**B.     Defendants Misappropriated the Vast Majority of Pool Funds for Personal Expenses and to Make Ponzi Payments.**

25.     Of the over $3.4 million that Defendants received from pool participants, Defendants paid over $1.6 million in Ponzi payments to pool participants, claiming that the payments were the result of profitable trading.

26.     Defendants misappropriated approximately $1.8 million for personal expenses. Defendants regularly used corporate bank accounts for Castilla's personal expenses, which included car payments, home remodeling, lawn services, clothing, restaurants, and other withdrawals to Castilla's personal bank accounts.

27.     Defendants deposited only a small portion of pool participants' funds for their intended purpose of trading futures—only $105,000 of the over $3.4 million received.  Yet Defendants ultimately withdrew over $50,000 from trading accounts for personal expenses and to make Ponzi payments.

28.     The small amount of futures trading that Defendants engaged in was not profitable.

**C.     Defendants Provided False Account Statements Misrepresenting the Value of Client Accounts.**

29.     Defendants regularly provided pool participants with account statements that purportedly showed account values and trading activity for each pool participant's subaccount.

30.     The account statements that Defendants provided showed regular and consistent growth in the value of the purported subaccounts for each pool participant.  For example, in at least one instance, Defendants issued false account statements that, over time, showed consistent profits for an account showing growth from $50,000 to over $5 million.

31.     No accounts existed for any pool participants.  Defendants never created subaccounts for pool participants and very little of pool participants' funds were ever used for trading futures.

32.     During the Relevant Period, Defendants operated only three commodity interest trading accounts—two in the name of DCAST and one in the name of Five Traders.  Despite receiving over $3.4 million from pool participants for the purpose of trading commodity interests, Defendants deposited a mere $105,000 to their trading accounts.  Defendants lost about $50,000 in trading, and ultimately withdrew over $50,000 from the trading accounts—using the withdrawn funds for personal use or for Ponzi payments to pool participants.

**D.     Defendants' Misappropriation, Misrepresentations, and Omissions Were Intentional or Reckless and Operated as a Fraud on Pool Participants.**

33.     Defendants intentionally or recklessly made material misrepresentations.  Each solicitation of a pool participant was done with the intended purpose to obtain more funds for personal use or to make Ponzi payments to placate earlier pool participants.

34.     Defendants knew that their misrepresentations to pool participants were false and that the Pools did not exist.

35.     Defendants never intended to trade pool participants' funds.

36.     As noted above, less than four percent of pool participants' funds were deposited to futures trading accounts as promised and Defendants never used any pool participants' funds to establish subaccounts as promised.

37.     Defendants issued false account statements to pool participants showing significant growth in pool participants' subaccounts that never existed.

38.     On March 19, 2020, the Florida State Attorney's Office charged Castilla, in Miami-Dade County Case No. 13-2020-CF-004700-0001, with fraud and grand theft in connection with his fraudulent investment scheme.  In communications with pool participants after being charged, Defendants misrepresented the nature of the allegations against Castilla. Defendants claimed to some pool participants that the charges were due to a misunderstanding with an investor while reassuring pool participants that the account values in the statements Defendants provided were accurate and that Defendants had the funds to repay participants.

39.     After Castilla was charged criminally, Defendants continued soliciting new pool participants to keep the fraudulent scheme alive, using new funds to continue making Ponzi payments.

40.     In total, Defendants solicited over $700,000 from pool participants after Castilla was charged by the Florida State Attorney's Office.  Defendants used these funds for personal expenses and for Ponzi payments.

**E.    Defendants Failed to Operate the Pools as Separate Legal Entities or Receive Pool Funds in the Pools' Name.**

41.     Defendants did not operate the Pools as separate legal entities.  Defendants never created separate legal entities to receive contributions from pool participants.  Although Defendants solicited money on behalf of the Pools, Defendants failed to open bank or futures trading accounts for the Pools.  Rather, Defendants received pool funds in the name of DCAST or Five Traders, the CPOs, before the funds were then misappropriated for Castilla's personal use, misappropriated to make Ponzi payments, or transferred to Castilla's personal bank account.

42.     By transferring pool funds to Castilla's personal bank accounts, Defendants also commingled pool funds with non-pool funds.

43.     Defendants did not even treat the CPOs as separate entities, but instead commingled funds between DCAST and Five Traders treating both entities as interchangeable. For example, in some instances, Castilla used funds received by Five Traders to make Ponzi payments to pool participants that had previously provided funds to DCAST.

**F.    Castilla, DCAST, and Five Traders Failed to Register with the Commission**.

44.     During the Relevant Period, Defendants DCAST and Five Traders acted as CPOs in that they engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and they solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in commodity interests.

45.     Defendants DCAST and Five Traders used emails, wire transfers, internet video messaging, text messaging, and other means or instrumentalities of interstate commerce to solicit, accept, and receive pool participants' funds for the purpose of trading futures.

46.     During the Relevant Period, Defendants DCAST and Five Traders were never registered as CPOs and were not exempt or excluded from registration as CPOs.

47.     During the Relevant Period, Defendant Castilla was associated with DCAST and Five Traders as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool.

48.     During the Relevant Period, Defendant Castilla was never registered as an associated person of DCAST or Five Traders.

**G.     Defendants Failed to Provide Pool Disclosures and Other Relevant Documents.**

49.     DCAST and Five Traders, while acting as the CPOs of the Pools, failed to provide pool disclosure documents and other documents required by Regulations 4.21 and 4.22, 17 C.F.R. §§ 4.21, 4.22 (2021), including but not limited to required cautionary statements, risk disclosures, fees and expenses incurred by the Pools, past performance disclosures, a statement that the CPO is required to provide to all pool participants with monthly or quarterly account statements, and an annual report containing financial statements certified by an independent public accountant.

**H.     Defendants Made False Statements of Material Fact to the Commission.**

50.     On June 21, 2021, the Commission's Division of Enforcement issued a subpoena to Defendants requiring, among other things, that Defendants produce "[d]ocuments sufficient to show the names, addresses, phone numbers, e-mail address, and any other contact information of all current and former customers or clients" of Defendants since 2012.  On August 27, 2021,

after retaining counsel, Defendants produced a document that included a list identifying five clients.

51.     On August 31, 2021, Defendants, through counsel, confirmed that Defendants had completed their response to the subpoena's request for information concerning current or former customers or clients.

52.     Defendants response identifying only five customers or clients was a false statement of material fact.  As alleged above, Defendants had at least 50 clients during the Relevant Period.

53.     On September 23, 2021, Defendants submitted a supplemental list identifying an additional seven customers or clients.  This list, containing twelve customers or clients, was also a false statement of material fact.

54.     Defendants knew or reasonably should have known that their responses to the subpoena were false or misleading.  In particular, Defendants failed to disclose over forty clients that provided, collectively, almost $2 million.  Defendants communicated with at least one undisclosed client as recently as October 2021 concerning repayment of funds—with Defendants making false statements to the pool participant that funds were available in trading accounts or bank accounts but that Defendants were having temporary delays in accessing those funds.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT I – Solicitation Fraud, Misappropriation, and False Account Statements

### Violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C)

55.     Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56.     7 U.S.C. § 6b(a)(1)(A)-(C) makes it unlawful:

(1)     [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate

commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . .

> (A) to cheat or defraud or attempt to cheat or defraud the other person;
>
> (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person[.]

57.     Defendants engaged in a fraud by, among other things:  (1) misrepresenting that Defendants earned significant profits on behalf of pool participants by trading futures; (2) misrepresenting that the returns Defendants paid to pool participants were generated from futures trading profits; (3) misrepresenting that Castilla was an experienced and profitable trader; (4) misrepresenting that pool participants would have their own trading subaccounts with Defendants DCAST or Five Traders; (5) misappropriating pool participants' funds for Castilla's personal expenses; (6) issuing false account statements to pool participants; and (7) failing to disclose that Castilla had been charged by the Florida State Attorney's Office for fraud and grand theft in connection with his solicitation of certain pool participants.

58.     By reason of the conduct above, Defendants, in or in connection with any order to make, or the making of, commodity futures transactions made on or subject to the rules of a designated contract market knowingly or recklessly:  (1) cheated or defrauded or attempted to cheat or defraud pool participants; and/or (2) deceived or attempted to deceive pool participants by any means whatsoever.

59.     By reason of the foregoing, Castilla, DCAST, and Five Traders violated 7 U.S.C. § 6b(a)(1)(A)-(C).

60.     Defendants committed the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

61.     When Castilla committed the acts, omissions, and failures in violation of 7 U.S.C. § 6b(a)(1)(A)-(C), he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021).

62.     At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct alleged in this Count; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6b(a)(1)(A)-(C).

63.     Each misrepresentation, omission of material fact, or false report or statement, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C).

### COUNT II – Fraud by Commodity Pool Operators and Their Associated Person

### Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B)

64.     Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

65.     Section 1a(10) of the Act, 7 U.S.C. § 1a(10), in part, defines a commodity pool as "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, . . . . "

66.     Section 1a(11)(A)(i) of the Act, 7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person:

> [E]ngaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)     commodity for future delivery, security futures product, or swap[.]

67.     During the Relevant Period, DCAST and Five Traders engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, DCAST and Five Traders acted as CPOs, as defined by 7 U.S.C. § 1a(11).

68.     Under Section 4k(2) of the Act, 7 U.S.C. § 6k(2), in relevant part, a person is an associated person ("AP") of a CPO if that person is associated with a CPO as

> [A] partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves
>
> (i)     the solicitation of funds, securities, or property for a participation in a commodity pool or
>
> (ii)    the supervision of any person or persons so engaged[.]

69.     During the Relevant Period, Castilla was a partner, officer, employee, consultant, or agent of DCAST and Five Traders (or occupied a similar status or performed similar functions), in a capacity that involved the solicitation of funds, securities, or property for participation in the Pools.

70.     7 U.S.C. § 6*o*(1)(A), (B) prohibits CPOs and APs of CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing devices, schemes, or artifices to defraud any client or participant or prospective client or participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

71.     Defendants engaged in a fraud by, among other things:  (1) misrepresenting that Defendants earned significant profits on behalf of pool participants by trading futures; (2) misrepresenting that the returns Defendants paid to pool participants were generated from futures trading profits; (3) misrepresenting that Castilla was an experienced and profitable trader; (4) misrepresenting that pool participants would have their own trading subaccounts with Defendants DCAST or Five Traders; (5) misappropriating pool participants' funds for Castilla's personal expenses; (6) issuing false account statements to pool participants; and (7) failing to disclose that Castilla had been charged by the Florida State Attorney's Office for fraud and grand theft in connection with his solicitation of certain pool participants.

72.     By reason of the conduct described above, Defendants, through use of the mails or any means of instrumentality of interstate commerce:  (1) knowingly or recklessly employed devices, schemes or artifices to defraud pool participants and prospective pool participants; or (2) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon pool participants or prospective pool participants, by misappropriating pool participant funds and making material misrepresentations to pool participants.

73.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6*o*(1)(A), (B).

74. At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6$o$(1)(A), (B).

75. When Castilla committed the acts, omissions, and failures in violation of 7 U.S.C. § 6$o$(1)(A), (B), he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

76. Each act of misrepresentation, omission of material fact, or false report or statement, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6$o$(1)(A), (B).

**<u>COUNT III - Failure to Register as Commodity Pool Operators</u>**

**Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)**

77. Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

78. Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO] . . . ."

79. By reason of the foregoing, DCAST and Five Traders engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of

stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, DCAST and Five Traders acted as a CPO, as defined by 7 U.S.C. § 1a(11).

80.     DCAST and Five Traders, while using the mails or means of interstate commerce in connection with its business as a CPO, were not registered with the CFTC as a CPO.

81.     By reason of the foregoing, DCAST and Five Traders acted as unregistered CPOs in violation of 7 U.S.C. § 6m(1).

82.     At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6m(1).

83.     When Castilla committed the acts, omissions, and failures in violation of 7 U.S.C. § 6m(1), he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

84.     Each instance that DCAST and Five Traders acted as a CPO but failed to register with the CFTC as such is alleged as a separate and distinct violation of 7 U.S.C. § 6m(1).

## COUNT IV – Failure to Register as an Associated Person of Commodity Pool Operators
### Violations of Sections 4k(2) of the Act, 7 U.S.C. § 6k(2)

85.     Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

86.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) makes it "unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves . . . the solicitation of funds, securities, or property for a participant in a commodity pool[.]"

87.	7 U.S.C. § 6k(2) makes it "unlawful for any commodity pool operator to permit [an unregistered AP] to become or remain associated with the [CPO] in such capacity if the [CPO] knew or should have known that such person was not so registered[.]"

88.	During the Relevant Period, Castilla was associated with DCAST and Five Traders as a member, partner, officer, employee, consultant, agent, or in a similar capacity, and Castilla solicited funds for participation in the Pools.

89.	Castilla was never registered with the CFTC as an AP of DCAST or Five Traders.

90.	By reason of the foregoing, Castilla acted as an unregistered AP of DCAST and Five Traders, CPOs, in violation of 7 U.S.C. § 6(k)(2).

91.	During the Relevant Period, DCAST and Five Traders knew that Castilla acted as an unregistered AP of DCAST and Five Traders, in violation of 7 U.S.C. § 6k(2).

92.	When Castilla failed to register with the Commission as an associated person, he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

93.	At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's failure to register as CPOs alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. §§ 6k(2).

94.	Each instance that Castilla acted as an unregistered AP of DCAST and Five Traders but failed to register with the CFTC as such is alleged as a separate and distinct violation of 7 U.S.C. § 6k(2).

**COUNT V – Failing to Operate a Pool as a Separate Entity, Failing to Accept Funds in the Name of the CPO, and Commingling Pool Property**

**Violation of Regulation 4.20, 17 C.F.R. § 4.20 (2021)**

95.     Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

96.     17 C.F.R. § 4.20(a)(1) requires a CPO, whether registered or not, to operate its pool as a legal entity separate from that of the CPO.

97.     17 C.F.R. § 4.20(b) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

98.     17 C.F.R. § 4.20(c) requires that a CPO may not commingle the property of any pool that it operates or that it intends to operate with the property of any other person.

99.     During the Relevant Period, DCAST and Five Traders, while acting as CPOs for the Pools, failed to operate the Pools as a legal entity separate from themselves and from Castilla as an individual.  Defendants received pool participants' funds in their own names rather than the name of a legally cognizable commodity pool.  Defendants commingled pool participants' funds with Castilla's funds in Castilla's personal bank accounts.

100.    By reason of the foregoing, DCAST and Five Traders violated of 17 C.F.R. § 4.20(a)(1), (b), and(c).

101.    At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 17 C.F.R. § 4.20.

102.    Each act of failing to operate the Pools as separate legal entities, receiving pool participants' funds in the name of DCAST or Five Traders rather than in the name of the Pools,

and commingling pool funds with non-pool funds is alleged as separate and distinct violation of

17 C.F.R. § 4.20.

### COUNT VI – Failure to Provide Pool Disclosures and Other Required Documents

**Violation of Regulations 4.21 and 4.22, 17 C.F.R. §§ 4.21, 4.22 (2021)**

103.    Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

104.    17 C.F.R. § 4.21, in relevant part, provides that:

> [E]ach [CPO] registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

105.    Upon information and belief, during the Relevant Period, DCAST and Five

Traders did not provide to prospective pool participants a Disclosure Document with the

necessary disclosures in accordance with 17 C.F.R. §§ 4.24 and 4.25.

106.    17 C.F.R. § 4.22 requires, in relevant part, that CPOs (registered or required to be

registered) provide periodic account statements to investors—presented and computed in

accordance with generally accepted accounting principles—itemizing, among other things, the

total amount of realized net gain or loss on commodity interest positions liquidated during the

reporting period, the total amount of unrealized net gain or loss on commodity interest positions

during the reporting period, and the total amount of net gain or loss from all other transactions in

which the pool engaged during the reporting period.

107.    During the Relevant Period, DCAST and Five Traders did not provide periodic

account statements to pool participants that itemized the total amount of realized net gain or loss

on commodity interest positions liquidated during the reporting period, the total amount of

unrealized net gain or loss on commodity interest positions during the reporting period, and the

total amount of net gain or loss from all other transactions in which the Pools engaged during the reporting period.

108.   By reason of the foregoing, DCAST and Five Traders violated 17 C.F.R. §§ 4.21 and 4.22.

109.   At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct alleged in this Count; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 17 C.F.R. §§ 4.21 and 4.22.

110.   Each failure to furnish the required disclosure documents and account statements and reports to prospective pool participants and pool participants, including, but not limited to, those specifically alleged herein, is a separate and distinct violation of 17 C.F.R. §§ 4.21 and 4.22.

## COUNT VII – Making False Statements to the Commission
### Violation of Section 6(c)(2) of the Act, 7 U.S.C. § 9(2)

111.   Paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

112.   7 U.S.C. § 9(2) provides that it "shall be unlawful for any person to make any false or misleading statement of a material fact to the Commission . . . if the person knew, or reasonably should have known, the statement to be false or misleading."

113.   By submitting false and misleading statements that Defendants knew or reasonably should have known were false, Defendants violated 7 U.S.C. § 9(2).

114.   When Castilla made false statements of material fact to the Commission, he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore, such

acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

115.    At all times relevant to this Complaint, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's failure to register as CPOs alleged in this Count; therefore, pursuant to Section 13(b) of the Act, Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 9(2).

116.    Each false statement of material fact to the Commission is alleged as a separate and distinct violation of 7 U.S.C. § 9(2).

## VI.    <u>RELIEF REQUESTED</u>

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find that Defendants violated Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4$o$(1)(A) and (B), 6(c)(2) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6$o$(1)(A), (B), 9(2), and Regulations 4.20, 4.21, 4.22, 17 C.F.R. §§ 4.20, 4.21, 4.22 (2021); and

B.    Enter an order of permanent injunction enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6$o$(1)(A), (B), 9(2) and 17 C.F.R. §§ 4.20, 4.21, 4.22;

C.    Enter an order of permanent injunction restraining and enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1.    Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2.    Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3.    Having any commodity interests traded on any Defendant's behalf;

4.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5.    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6.    Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

7.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

D.    Enter an order directing Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

E.    An order requiring Defendants, jointly and severally, to make restitution to persons who have sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.    Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations as described herein;

G.    Enter an order directing Defendants, jointly and severally, to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), tit. VII, § 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act and Regulations, as described herein;

H.    Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

I.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


May 17, 2022                                 Respectfully submitted,

                                             PLAINTIFF COMMODITY FUTURES
                                             TRADING COMMISSION


                                             s/Thomas L. Simek
                                             Thomas L. Simek (S.D. Fla. Bar # A5502134)
                                             Nicholas S. Sloey (S.D. Fla. Bar # A5502824)
                                             Commodity Futures Trading Commission
                                             2600 Grand Boulevard, Suite 210
                                             Kansas City, MO 64108
                                             Telephone:     816-960-7760 (Simek)
                                                            816-960-7728 (Sloey)
                                             Facsimile:     816-960-7751
                                             E-mail:        tsimek@cftc.gov
                                                            nsloey@cftc.gov