**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** ) | |
| ) | |
| ) | **Case No. 1:22-cv-21520** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DAMIAN CASTILLA, DCAST CAPITAL INVESTMENTS LLC, and FIVE TRADERS LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT DAMIAN CASTILLA

### I.      INTRODUCTION

On May 17, 2022, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Damian Castilla ("Castilla"), DCAST Capital Investments LLC ("DCAST"), and Five Traders LLC ("Five Traders") (collectively "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

### II.      CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Castilla without a trial on the merits or any further judicial proceedings, Defendant Castilla:

1.      Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Castilla ("Consent Order");

2.      Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledges service of the summons and Complaint;

4.      Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.      Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6.      Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.      Waives:

 (a)      Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

 (b)      Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

 (c)      Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

 (d)      Any and all rights of appeal from this action;

8.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant Castilla is now or in the future resides outside the jurisdiction of this Court;

9.     Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10.     Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant Castilla's and/or his agents' and/or employees': (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendant Castilla shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11.     Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits;

12.     Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13.     Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to

which the Commission is a party, other than a: statutory disqualification proceeding; proceeding

in bankruptcy, or receivership; or proceeding to enforce the terms of this Order; and

      14.     Agrees that no provision of this Consent Order shall in any way limit or impair

the ability of any other person or entity to seek any legal or equitable remedy against him in any

other proceeding.

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

      The Court, being fully advised in the premises, finds that there is good cause for the entry

of this Consent Order and that there is no just reason for delay.  The Court therefore directs the

entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable

relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.  The findings and

conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

      **1.    The Parties to this Consent Order**

      15.     Plaintiff Commodity Futures Trading Commission is an independent federal

regulatory agency that is charged by Congress with administering and enforcing the Act and the

Regulations.

      16.     Defendant Damian Castilla is a resident of Miami, Florida and is the sole owner

and sole managing member of DCAST and Five Traders.  Castilla applied for registration with

the Commission as a commodity trading advisor in August 2013, but withdrew that application in

November 2013.

      **2.    Other Defendants Not Parties to this Consent Order**

      17.     Defendant DCAST Capital Investments LLC is a Florida entity with its last

known place of business in Miami, Florida.  DCAST previously claimed an exemption from

registration with the Commission as a commodity trading advisor, but withdrew its exemption in April 2015. It has never been registered with the Commission. Castilla is the sole owner and manager of DCAST. The clerk entered default against Defendant DCAST on July 8, 2022. (Dkt No. 10.) Consistent with the Court's order granting Defendant Castilla's Motion to Set Aside Default, Plaintiff will move for default judgment against DCAST within twenty days after the entry of this Consent Order. (*See* Dkt No. 16.)

18.     Defendant Five Traders LLC is a Wyoming entity with its principal place of business in Miami, Florida. It has never been registered with the Commission. Castilla is the sole owner and manager of Five Traders. The clerk entered default against Defendant Five Traders on July 8, 2022. (Dkt No. 10.) Consistent with the Court's order granting Defendant Castilla's Motion to Set Aside Default, Plaintiff will move for default judgment against Five Traders within twenty days after the entry of this Consent Order. (*See* Dkt No. 16.)

### 3.     Defendants Fraudulently Solicited Pool Participants for the Pools.

19.     Between at least January 1, 2014 and continuing through May 17, 2022, the date of the filing of the Complaint (the "Relevant Period"), Castilla, DCAST, and Five Traders, engaged in a fraudulent scheme to solicit and misappropriate money given to them for the purpose of trading commodity futures contracts ("futures") in commodity pools. DCAST and Five Traders were unregistered commodity pool operators ("CPOs"), and Castilla was an unregistered associated person ("AP") of both CPOs. During the Relevant Period, Defendants fraudulently solicited over $3.4 million from over fifty individuals and entities ("pool participants") to trade futures in commodity pools (the "Pools") that did not exist.

20.     During the Relevant Period, Defendants made material misrepresentations and omissions to pool participants and prospective pool participants about the Pools via telephone, in-person, video-conferencing, and electronic communications.

21.     Defendants misrepresented a long history of professional trading—claiming, at times, that Castilla had nearly twenty years of successful professional trading experience, over five years of futures trading experience, and that trading futures had become Castilla's full-time job.  In reality, Defendants engaged in very little trading of futures and the little trading Defendants engaged in was not profitable.

22.     Defendants claimed that pool participants would have separate subaccounts connected to a master trading account that would automatically allocate trades that Defendants placed among Defendants accounts and the accounts of other pool participants.  In reality, Defendants never established any subaccounts for any pool participants; rather Defendants provided pool participants with fake account statements showing fictitious trades and fictitious account balances that represented pool participants' individualized shares of Defendants' trading activity.

23.     Once Defendants obtained money from pool participants, Defendants continued to misrepresent their futures trading as profitable by providing pool participants with fake trading account statements that showed regular and consistent profits in purported subaccounts. Defendants regularly used the false trading history reflected in these fake subaccount statements to solicit additional funds from pool participants as well as to solicit new pool participants.

24.     Defendants often solicited friends and family of earlier pool participants that received fake account statements.  For example, Defendants regularly claimed during oral solicitations that they typically earned profits between eight and ten percent per year for other

pool participants.  The claimed returns were often consistent with the fake account statements that Defendants provided to pool participants.

25.     Additionally, Defendants made Ponzi payments to earlier pool participants, misrepresenting that the funds being returned were from profitable trading in futures accounts. Defendants used these Ponzi payments to further solicit friends and families of pool participants. For example, during solicitations of new pool participants, Defendants pointed to the Ponzi payments as proof that Defendants ran legitimate, profitable commodity pools.  In one instance, Defendants made Ponzi payments of over $40,000 between July and October 2020 to Participant A.  Shortly thereafter, Defendants obtained $200,000 from two pool participants that were acquaintances of Participant A.  Within three weeks of receiving this $200,000 contribution, Defendants made additional Ponzi payments of over $150,000 to other pool participants. Defendants' bank records show that on many occasions, Defendants would often dole out recently-received pool participant contributions to earlier pool participants within days of receipt.

26.     The profits claimed were fake, and like all Ponzi schemes, Defendants became unable to repay all pool participants that requested redemptions.  Defendants then resorted to even more false claims to pool participants who requested funds.  In a number of instances, Defendants claimed that the money was available, but that Defendants' bank accounts had been frozen by various government agencies.  To some pool participants, Defendants claimed that the Office of Foreign Assets Control had frozen Defendants' bank accounts due to issues with the funding source of another pool participant.  To other pool participants, Defendants claimed that the Commission froze Defendants' bank accounts during an investigation that Defendants were trying to resolve.  Defendants' bank accounts were never frozen by a government agency; Defendants simply did not have the funds available to repay pool participants.

**4.      Defendants Misappropriated the Vast Majority of Pool Funds for Personal Expenses and to Make Ponzi Payments.**

27.      Of the over $3.4 million that Defendants received from pool participants, Defendants paid over $1.6 million in Ponzi payments to pool participants, claiming that the payments were the result of profitable trading.

28.      Defendants misappropriated approximately $1.8 million for personal expenses. Defendants regularly used corporate bank accounts for Castilla's personal expenses, which included car payments, home remodeling, lawn services, clothing, restaurants, and other withdrawals to Castilla's personal bank accounts.

29.      Defendants deposited only a small portion of pool participants' funds for their intended purpose of trading futures—only $105,000 of the over $3.4 million received.  Yet Defendants ultimately withdrew over $50,000 from trading accounts for personal expenses and to make Ponzi payments.

30.      The small amount of futures trading that Defendants engaged in was not profitable.

**5.      Defendants Provided False Account Statements Misrepresenting the Value of Client Accounts.**

31.      Defendants regularly provided pool participants with account statements that purportedly showed account values and trading activity for each pool participant's subaccount.

32.      The account statements that Defendants provided showed regular and consistent growth in the value of the purported subaccounts for each pool participant.  For example, in at least one instance, Defendants issued false account statements that, over time, showed consistent profits for an account showing growth from $50,000 to over $5 million.

33.     No accounts existed for any pool participants.  Defendants never created subaccounts for pool participants and very little of pool participants' funds were ever used for trading futures.

34.     During the Relevant Period, Defendants operated only three commodity interest trading accounts—two in the name of DCAST and one in the name of Five Traders.  Despite receiving over $3.4 million from pool participants for the purpose of trading commodity interests, Defendants deposited a mere $105,000 to their trading accounts.  Defendants lost about $50,000 in trading, and ultimately withdrew over $50,000 from the trading accounts—using the withdrawn funds for personal use or for Ponzi payments to pool participants.

**6.     Defendants' Misappropriation, Misrepresentations, and Omissions Were Intentional or Reckless and Operated as a Fraud on Pool Participants.**

35.     Defendants intentionally or recklessly made material misrepresentations.  Each solicitation of a pool participant was done with the intended purpose to obtain more funds for personal use or to make Ponzi payments to placate earlier pool participants.

36.     Defendants knew that their misrepresentations to pool participants were false and that the Pools did not exist.

37.     Defendants never intended to trade pool participants' funds.

38.     Less than four percent of pool participants' funds were deposited to futures trading accounts as promised and Defendants never used any pool participants' funds to establish subaccounts as promised.

39.     Defendants issued false account statements to pool participants showing significant growth in pool participants' subaccounts that never existed.

40.     On March 19, 2020, the Florida State Attorney's Office charged Castilla, in Miami-Dade County Case No. 13-2020-CF-004700-0001, with fraud and grand theft in connection with his fraudulent investment scheme.  In communications with pool participants after being charged, Defendants misrepresented the nature of the allegations against Castilla. Defendants claimed to some pool participants that the charges were due to a misunderstanding with an investor while reassuring pool participants that the account values in the statements Defendants provided were accurate and that Defendants had the funds to repay participants.

41.     After Castilla was charged criminally, Defendants continued soliciting new pool participants to keep the fraudulent scheme alive, using new funds to continue making Ponzi payments.

42.     In total, Defendants solicited over $700,000 from pool participants after Castilla was charged by the Florida State Attorney's Office.  Defendants used these funds for personal expenses and for Ponzi payments.

### 7.     Defendants Failed to Operate the Pools as Separate Legal Entities or Receive Pool Funds in the Pools' Names.

43.     Defendants did not operate the Pools as separate legal entities.  Defendants never created separate legal entities to receive contributions from pool participants.  Although Defendants solicited money on behalf of the Pools, Defendants failed to open bank or futures trading accounts for the Pools.  Rather, Defendants received pool funds in the name of DCAST or Five Traders, the CPOs, before the funds were then misappropriated for Castilla's personal use, misappropriated to make Ponzi payments, or transferred to Castilla's personal bank account.

44.     By transferring pool funds to Castilla's personal bank accounts, Defendants also commingled pool funds with non-pool funds.

45.     Defendants did not even treat the CPOs as separate entities, but instead commingled funds between DCAST and Five Traders treating both entities as interchangeable. For example, in some instances, Castilla used funds received by Five Traders to make Ponzi payments to pool participants that had previously provided funds to DCAST.

### 8.     Castilla, DCAST, and Five Traders Failed to Register with the Commission.

46.     During the Relevant Period, Defendants DCAST and Five Traders acted as CPOs in that they engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and they solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in commodity interests.

47.     Defendants DCAST and Five Traders used emails, wire transfers, internet video messaging, text messaging, and other means or instrumentalities of interstate commerce to solicit, accept, and receive pool participants' funds for the purpose of trading futures.

48.     During the Relevant Period, Defendants DCAST and Five Traders were never registered as CPOs and were not exempt or excluded from registration as CPOs.

49.     During the Relevant Period, Defendant Castilla was associated with DCAST and Five Traders as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool.

50.     During the Relevant Period, Defendant Castilla was never registered as an AP of DCAST or Five Traders.

### 9.     Defendants Failed to Provide Pool Disclosures and Other Relevant Documents.

51.     DCAST and Five Traders, while acting as the CPOs of the Pools, failed to provide pool disclosure documents and other documents required by Regulations 4.21 and 4.22,

11

17 C.F.R. §§ 4.21, 4.22 (2021), including but not limited to required cautionary statements, risk disclosures, fees and expenses incurred by the Pools, past performance disclosures, a statement that the CPO is required to provide to all pool participants with monthly or quarterly account statements, and an annual report containing financial statements certified by an independent public accountant.

### 10.  Defendants Made False Statements of Material Fact to the Commission.

52.  On June 21, 2021, the Commission's Division of Enforcement issued a subpoena to Defendants requiring, among other things, that Defendants produce "[d]ocuments sufficient to show the names, addresses, phone numbers, e-mail address, and any other contact information of all current and former customers or clients" of Defendants since 2012.  On August 27, 2021, after retaining counsel, Defendants produced a document that included a list identifying five clients.

53.  On August 31, 2021, Defendants, through counsel, confirmed that Defendants had completed their response to the subpoena's request for information concerning current or former customers or clients.

54.  Defendants response identifying only five customers or clients was a false statement of material fact, because Defendants had at least 50 clients during the Relevant Period.

55.  On September 23, 2021, Defendants submitted a supplemental list identifying an additional seven customers or clients.  This list, containing twelve customers or clients, was also a false statement of material fact.

56.  Defendants knew or reasonably should have known that their responses to the subpoena were false or misleading.  In particular, Defendants failed to disclose over forty clients that provided, collectively, almost $2 million.  Defendants communicated with at least one

undisclosed client as recently as October 2021 concerning repayment of funds—with Defendants making false statements to the pool participant that funds were available in trading accounts or bank accounts but that Defendants were having temporary delays in accessing those funds.

**B.    Conclusions of Law**

**1.    The Court has Jurisdiction, and Venue is Proper.**

53.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

54.    Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendant Castilla resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**2.    Defendants Fraudulently Solicited, Misappropriated Funds, and Issued False Account Statements in Violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C).**

55. 7 U.S.C. § 6b(a)(1)(A)-(C) makes it unlawful:

> (1)    [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . .

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person[.]

56.     Defendants engaged in a fraud by, among other things:  (1) misrepresenting that Defendants earned significant profits on behalf of pool participants by trading futures; (2) misrepresenting that the returns Defendants paid to pool participants were generated from futures trading profits; (3) misrepresenting that Castilla was an experienced and profitable trader; (4) misrepresenting that pool participants would have their own trading subaccounts with Defendants DCAST or Five Traders; (5) misappropriating pool participants' funds for Castilla's personal expenses; (6) issuing false account statements to pool participants; and (7) failing to disclose that Castilla had been charged by the Florida State Attorney's Office for fraud and grand theft in connection with his solicitation of certain pool participants.

57.     By reason of the conduct described above, Defendants, in or in connection with any order to make, or the making of, commodity futures transactions made on or subject to the rules of a designated contract market knowingly or recklessly:  (1) cheated or defrauded or attempted to cheat or defraud pool participants; and/or (2) deceived or attempted to deceive pool participants by any means whatsoever.

58.     By reason of the foregoing, Castilla, DCAST, and Five Traders violated 7 U.S.C. § 6b(a)(1)(A)-(C).

59.     Defendants committed the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

14

60.     When Castilla committed the acts, omissions, and failures in violation of 7 U.S.C.

§ 6b(a)(1)(A)-(C), he was acting within the scope of his agency, employment, and office at

DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be

those of DCAST and Five Traders pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C.

§ 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2021).

61.     At all times relevant to this Consent Order, Castilla controlled DCAST and Five

Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or

indirectly, DCAST's and Five Traders's conduct; therefore, pursuant to 7 U.S.C. § 13c(b),

Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6b(a)(1)(A)-(C).

62.     Each act of misrepresentation, omission of material fact, or false report or

statement is a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C).

### 3.     Defendants Committed Fraud by Commodity Pool Operators and Their Associated Person in Violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B).

63.     Section 1a(10) of the Act, 7 U.S.C. § 1a(10), in part, defines a commodity pool as

"any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading

in commodity interests, . . . ."

64.     Section 1a(11)(A)(i) of the Act, 7 U.S.C. § 1a(11)(A)(i), defines a CPO, in

relevant part, as any person:

> [E]ngaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)     commodity for future delivery, security futures product, or swap[.]

65.     During the Relevant Period, DCAST and Five Traders engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, DCAST and Five Traders acted as CPOs, as defined by 7 U.S.C. § 1a(11).

66.     Under Section 4k(2) of the Act, 7 U.S.C. § 6k(2), in relevant part, a person is an AP of a CPO if that person is associated with a CPO as

[A] partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves

(i) the solicitation of funds, securities, or property for a participation in a commodity pool or

(ii) the supervision of any person or persons so engaged[.]

67.     During the Relevant Period, Castilla was a partner, officer, employee, consultant, or agent of DCAST and Five Traders (or occupied a similar status or performed similar functions), in a capacity that involved the solicitation of funds, securities, or property for participation in the Pools.

68.     7 U.S.C. § 6o(1)(A), (B) prohibits CPOs and APs of CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing devices, schemes, or artifices to defraud any client or participant or prospective client or participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

69.     Defendants engaged in a fraud by, among other things:  (1) misrepresenting that Defendants earned significant profits on behalf of pool participants by trading futures; (2) misrepresenting that the returns Defendants paid to pool participants were generated from futures trading profits; (3) misrepresenting that Castilla was an experienced and profitable trader; (4) misrepresenting that pool participants would have their own trading subaccounts with Defendants DCAST or Five Traders; (5) misappropriating pool participants' funds for Castilla's personal expenses; (6) issuing false account statements to pool participants; and (7) failing to disclose that Castilla had been charged by the Florida State Attorney's Office for fraud and grand theft in connection with his solicitation of certain pool participants.

70.     By reason of the conduct described above, Defendants, through use of the mails or any means of instrumentality of interstate commerce:  (1) knowingly or recklessly employed devices, schemes or artifices to defraud pool participants and prospective pool participants; or (2) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon pool participants or prospective pool participants, by misappropriating pool participant funds and making material misrepresentations to pool participants.

71.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6$o$(1)(A), (B).

72.     At all times relevant to this Consent Order, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6$o$(1)(A), (B).

73.     When Castilla committed the acts, omissions, and failures in violation of 7 U.S.C. § 6$o$(1)(A), (B), he was acting within the scope of his agency, employment, and office

at DCAST and Five Traders; therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

74.     Each act of misrepresentation, omission of material fact, or false report or statement is a separate and distinct violation of 7 U.S.C. § 6o(1)(A), (B).

### 4.   DCAST and Five Traders Failed to Register as a Commodity Pool Operator in Violation of Section 4m(1) of the Act, 7 U.S.C. §6m(1), and Castilla is Liable as a Control Person for Their Violations.

75.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO] . . . ."

76.     By reason of the foregoing, DCAST and Five Traders engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, DCAST and Five Traders acted as a CPO, as defined by 7 U.S.C. § 1a(11).

77.     DCAST and Five Traders, while using the mails or means of interstate commerce in connection with its business as a CPO, were not registered with the CFTC as a CPO.

78.     By reason of the foregoing, DCAST and Five Traders acted as unregistered CPOs in violation of 7 U.S.C. § 6m(1).

79.     At all times relevant to this Consent Order, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or

indirectly, DCAST's and Five Traders's conduct; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 6m(1).

80.    Each instance that DCAST and Five Traders acted as a CPO but failed to register with the CFTC as such is a separate and distinct violation of 7 U.S.C. § 6m(1).

      **5.**    **Castilla Failed to Register as an Associated Person of Commodity Pool Operators in Violation of Sections 4k(2) of the Act, 7 U.S.C. § 6k(2).**

81.    Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) makes it "unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves . . . the solicitation of funds, securities, or property for a participant in a commodity pool[.]"

82.    7 U.S.C. § 6k(2) also makes it "unlawful for any commodity pool operator to permit [an unregistered AP] to become or remain associated with the [CPO] in such capacity if the [CPO] knew or should have known that such person was not so registered[.]"

83.    During the Relevant Period, Castilla was associated with DCAST and Five Traders as a member, partner, officer, employee, consultant, agent, or in a similar capacity, and Castilla solicited funds for participation in the Pools.

84.    Castilla was never registered with the CFTC as an AP of DCAST or Five Traders.

85.    By reason of the foregoing, Castilla acted as an unregistered AP of DCAST and Five Traders, CPOs, in violation of 7 U.S.C. § 6(k)(2).

86.    During the Relevant Period, DCAST and Five Traders knew that Castilla acted as an unregistered AP of DCAST and Five Traders, in violation of 7 U.S.C. § 6k(2).

87.    When Castilla failed to register with the Commission as an AP, he was acting within the scope of his agency, employment, and office at DCAST and Five Traders; therefore,

such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

88.     Each instance that Castilla acted as an unregistered AP of DCAST and Five Traders but failed to register with the CFTC as such is a separate and distinct violation of 7 U.S.C. § 6k(2).

### 6.     Defendants Failed to Operate a Pool as a Separate Entity, Failed to Accept Funds in the Name of the CPO, and Commingled Pool Property in Violation of Regulation 4.20, 17 C.F.R. § 4.20 (2021).

89.     17 C.F.R. § 4.20(a)(1) requires a CPO, whether registered or not, to operate its pool as a legal entity separate from that of the CPO.

90.     17 C.F.R. § 4.20(b) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

91.     17 C.F.R. § 4.20(c) requires that a CPO may not commingle the property of any pool that it operates or that it intends to operate with the property of any other person.

92.     During the Relevant Period, DCAST and Five Traders, while acting as CPOs for the Pools, failed to operate the Pools as a legal entity separate from themselves and from Castilla as an individual.  Defendants received pool participants' funds in their own names rather than the name of a legally cognizable commodity pool.  Defendants commingled pool participants' funds with Castilla's funds in Castilla's personal bank accounts.

93.     By reason of the foregoing, DCAST and Five Traders violated of 17 C.F.R. § 4.20(a)(1), (b), and(c).

94.     At all times relevant to this Consent Order, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or

indirectly, DCAST's and Five Traders's conduct; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 17 C.F.R. § 4.20.

94.    Each act of failing to operate the Pools as separate legal entities, receiving pool participants' funds in the name of DCAST or Five Traders rather than in the name of the Pools, and commingling pool funds with non-pool funds is a separate and distinct violation of 17 C.F.R. § 4.20.

### 7.    Defendants Failed to Provide Pool Disclosures and Other Required Documents in Violation of Regulations 4.21 and 4.22, 17 C.F.R. §§ 4.21, 4.22 (2021).

96.    17 C.F.R. § 4.21, in relevant part, provides that:

> [E]ach [CPO] registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

97.    During the Relevant Period, DCAST and Five Traders did not provide to prospective pool participants a Disclosure Document with the necessary disclosures in accordance with 17 C.F.R. §§ 4.24 and 4.25.

98.    17 C.F.R. § 4.22 requires, in relevant part, that CPOs (registered or required to be registered) provide periodic account statements to investors—presented and computed in accordance with generally accepted accounting principles—itemizing, among other things, the total amount of realized net gain or loss on commodity interest positions liquidated during the reporting period, the total amount of unrealized net gain or loss on commodity interest positions during the reporting period, and the total amount of net gain or loss from all other transactions in which the pool engaged during the reporting period.

99.     During the Relevant Period, DCAST and Five Traders did not provide periodic account statements to pool participants that itemized the total amount of realized net gain or loss on commodity interest positions liquidated during the reporting period, the total amount of unrealized net gain or loss on commodity interest positions during the reporting period, and the total amount of net gain or loss from all other transactions in which the Pools engaged during the reporting period.

100.    By reason of the foregoing, DCAST and Five Traders violated 17 C.F.R. §§ 4.21 and 4.22.

101.    At all times relevant to this Consent Order, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's conduct; therefore, pursuant to 7 U.S.C. § 13c(b), Castilla is liable for DCAST's and Five Traders's violations of 17 C.F.R. §§ 4.21 and 4.22.

102.    Each failure to furnish the required disclosure documents and account statements and reports to prospective pool participants and pool participants is a separate and distinct violation of 17 C.F.R. §§ 4.21 and 4.22.

### 8.     Defendants Made False Statements to the Commission in Violation of Section 6(c)(2) of the Act, 7 U.S.C. § 9(2).

103.    7 U.S.C. § 9(2) provides that it "shall be unlawful for any person to make any false or misleading statement of a material fact to the Commission . . . if the person knew, or reasonably should have known, the statement to be false or misleading."

104.    By submitting false and misleading statements that Defendants knew or reasonably should have known were false, Defendants violated 7 U.S.C. § 9(2).

105.    When Castilla made false statements of material fact to the Commission, he was acting within the scope of his agency, employment, and office at DCAST and Five Traders;

therefore, such acts, practices, omissions, or failures are deemed to be those of DCAST and Five Traders pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

106.     At all times relevant to this Consent Order, Castilla controlled DCAST and Five Traders, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, DCAST's and Five Traders's false statements to the Commission; therefore, pursuant to Section 13(b) of the Act, Castilla is liable for DCAST's and Five Traders's violations of 7 U.S.C. § 9(2).

107.     Each false statement of material fact to the Commission is a separate and distinct violation of 7 U.S.C. § 9(2).

## IV.    PERMANENT INJUNCTION

## IT IS HEREBY ORDERED THAT:

108.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Castilla is permanently restrained, enjoined and prohibited from directly or indirectly:

 a. Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4b(a)(1)(A) of the Act, 7 U.S.C. §§ 6b(a)(1)(A);

 b. Willfully making or causing to be made false statements or reports to another person in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of 7 U.S.C. § 6b(a)(1)(B);

c. Willfully deceiving or attempting to deceive other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery in violation of 7 U.S.C. § 6b(a)(1)(C).

d. Employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant in violation of Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1); and

e. Making any false or misleading statement of material fact to the Commission in violation of Section 6(c)(2), 7 U.S.C. § 9(2).

109. Defendant Castilla is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40);

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

    g.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.      RESTITUTION, DISGORGEMENT, AND CIVIL MONETARY PENALTY

### A.    Restitution

110.    Defendant Castilla shall pay restitution in the amount of two million six hundred eighty-seven thousand four hundred and forty dollars ($2,687,440) ("Restitution Obligation"), representing losses to persons proximately caused by such violations described above.  Should Defendants DCAST and Five Traders, however, be found liable in connection with the Complaint and ordered to pay restitution for their misconduct, then the Restitution Obligation in this Consent Order will become joint and several with any restitution ordered against DCAST and Five Traders.

111.    If the Restitution Obligation is not paid immediately in full, post-judgment interest shall accrue on the unpaid portion of the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

112.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendant Castilla's customers/pool participants/clients, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments from Defendant Castilla and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

113.    Defendant Castilla shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name "Defendant Castilla–SETTLEMENT/RESTITUTION Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

114.    The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendant

Castilla's customers/pool participants/clients identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers/pool participants/clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V(C) below.

115.    Without waiver of Defendant Castilla's right to assert his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution, Defendant Castilla shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant Castilla's customers/pool participants/clients to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.   Defendant Castilla shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.  If Defendant Castilla asserts his privilege against self-incrimination in response to a request from the Monitor pursuant to this paragraph, Defendant Castilla, the Monitor, and Plaintiff shall meet-and-confer in an effort to resolve the issue without the need for court intervention.  If the parties are unable to resolve the issue, the parties may seek appropriate relief from the Court pursuant to paragraph 133 of this Consent Order.

116.    The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendant Castilla's customers/pool

participants/clients during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

117.     The amounts payable to each customer, pool participant, or client shall not limit the ability of any customer, pool participant, or client from proving that a greater amount is owed from Defendant Castilla or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer, pool participant, or client that exist under state or common law.

118.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer, pool participant, or client of Defendant Castilla who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant Castilla to ensure continued compliance with any provision of this Consent Order and to hold Defendant Castilla in contempt for any violations of any provision of this Consent Order.

119.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant Castilla's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Disgorgement**

120.     Defendant Castilla shall pay disgorgement in the amount of three million three hundred and fifty thousand dollars ($3,350,000) ("Disgorgement Obligation"), representing the gains received in connection with such violations.  Should Defendants DCAST and Five Traders, however, be found liable in connection with the Complaint and ordered to pay disgorgement for

their misconduct, then the Disgorgement Obligation in this Consent Order will become joint and several with any disgorgement ordered against DCAST and Five Traders.  For amounts paid in satisfaction of the Restitution Obligation under the terms of this Consent Order, Defendant Castilla shall receive a dollar-for-dollar credit against his Disgorgement Obligation.

121.    If the Disgorgement Obligation is not paid in full immediately, then post-judgment interest shall accrue on the unpaid portion of the Disgorgement Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

122.    Defendant Castilla shall pay his Disgorgement Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Castilla shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant Castilla shall accompany payment of the Disgorgement Obligation with a cover letter that identifies Defendant Castilla and the name and docket number of this proceeding.  Defendant Castilla shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## C.     Civil Monetary Penalty

123.     Defendant Castilla shall pay a civil monetary penalty in the amount of three million dollars ($3,000,000) ("CMP Obligation").  If the CMP Obligation is not paid in full immediately, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

124.     Defendant Castilla shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Castilla shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant Castilla shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant Castilla and the name and docket number of this proceeding.  Defendant Castilla shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**D.      Provisions Related to Monetary Sanctions**

125.      Partial Satisfaction:  Acceptance by the Commission/CFTC or the Monitor of any

partial payment of Defendant Castilla's Restitution Obligation, Disgorgement Obligation, or

CMP Obligation shall not be deemed a waiver of his obligation to make further payments

pursuant to this Consent Order, or a waiver of the Commission/CFTC's right to seek to compel

payment of any remaining balance.

## VI.      MISCELLANEOUS PROVISIONS

126.      Until such time as Castilla satisfies in full his Restitution, Disgorgement, and

CMP Obligations under this Consent Order, upon the commencement by or against Castilla of

insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of

Castilla's debts, all notices to creditors required to be furnished to the Commission under Title 11

of the United States Code or other applicable law with respect to such insolvency, receivership

bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

127.      Notice:  All notices required to be given by any provision in this Consent Order,

except as set forth in paragraph 126, above, shall be sent certified mail, return receipt requested,

as follows:

Notice to Commission:

> Charles Marvine
> Deputy Director
> 2600 Grand Boulevard, Suite 210
> Kansas City, MO 64108

Notice to Defendant Castilla:

> Damian Castilla, at an address he provides to the Commission within ten days of signing this Consent Order.

All such notices to the Commission shall reference the name and docket number of this action.

128.   Change of Address/Phone:  Until such time as Defendant Castilla satisfies in full his Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Consent Order, Defendant Castilla shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

129.   Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

130.   Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

131.   Waiver:  The failure of any party to this Consent Order or of any customer, pool participant, or client at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer, pool participant, or client at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

132.     Waiver of Service, and Acknowledgement:  Defendant Castilla waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Defendant Castilla of its terms and conditions. Defendant Castilla further agrees to provide counsel for the Commission, within thirty days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that Defendant Castilla has received and read a copy of this Consent Order.

133.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant Castilla to modify or for relief from the terms of this Consent Order.

134.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise: (1) Defendant Castilla; (2) any officer, agent, servant, employee, or attorney of Defendant Castilla; and (3) any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

135.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

136.    Contempt:  Defendant Castilla understands that the terms of the Consent Order, except with respect to disgorgement or restitution, are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

137.    Agreements and Undertakings:  Defendant Castilla shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Defendant Castilla* forthwith and without further notice.


IT IS SO ORDERED on this ___ day of _____, 2022

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

Damian Castilla

Date: 11/4/22

Nicholas S. Sloey – Chief Trial Attorney
Paul M. Flucke – Trial Attorney
Commodity Futures Trading Commission
2600 Grand Boulevard, Suite 210
Kansas City, MO 64108
Telephone: (816) 960-7728
Facsimile: (816) 960-7751
nsloey@cftc.gov
pflucke@cftc.gov

Dated _____